## DRISCOLL ET AL. *v.* PENROD, ADMINISTRATOR, ET AL.

### [No: 21,885. Filed June 6, 1911.]

1. LANDLORD AND TENANT.—*Oil and Gas Leases.—Contracts.—Rentals.—Complaint.*—A complaint alleging that the plaintiffs leased to defendants certain real estate for oil and gas prospecting, that defendants agreed that a second, third, fourth and fifth well should, successively, be sunk·within a certain time, that an existing well on such premises was regarded as the first well, that in default of sinking such wells certain rentals should be paid, that defendants failed to sink such fourth and fifth wells, and that such rentals are due and unpaid, states a cause of action, oral evidence being admissible to show that such existing well was to be considered the first well. p. 20.

2. CONTRACTS.—*Written.—Explaining.—Parol Evidence.*—A plain written contract cannot be varied or explained by parol evidence; but a contract whose terms are susceptible of two or more meanings may be so explained. p. 23.

3. CONTRACTS.—*Construction.*—Such a construction of a written contract will be adopted if possible as will make it effectual, reasonable and just. p. 23.

4. PARTIES.—*Death.—Personal Representatives.—Rentals.—Action for.*—In an action for rentals due under an oil and gas lease, the personal representative of a deceased plaintiff, and not his legal heirs, should be substituted as a party in his stead. p. 24.

5. PLEADING. — *Complaint. — Supplemental. — Death. — Harmless Error.—Appeal.*—Though it is the better practice, upon the death of a plaintiff, to file a supplemental complaint showing such fact, it does not constitute harmful error for the court, on an oral motion, and without objection, to order the decedent's administrator to be substituted as a party, such error being cured by §700 Burns 1908, §658 R S. 1881, forbidding the reversal of a judgment where the defect might have been amended and where the merits of the case were fairly determined below. p. 24.

6. LANDLORD AND TENANT.—*Leases.—Description of Premises.*—The failure, in a written lease, to describe the premises particularly is not fatal to such contract. p. 25.

From Wells Circuit Court; *Charles E. Sturgis*, Judge.

Action by Calvin S. Penrod, as administrator of the estate of George Grey, deceased, and others against Timothy J. Driscoll and others. From a judgment for plaintiffs, de-

fendants appeal. Transferred from Appellate Court under §1405 Burns 1908, Acts 1901 p. 590. *Affirmed.*

*John P. Boyd* and *L. B. Simmons,* for appellants.
*W. H. Eichhorn* and *E. C. Vaughn,* for appellees.

MORRIS, J.—This was an action by appellees against appellants to recover rentals on a gas and oil lease. From a judgment for plaintiffs, defendants appeal.

A demurrer to the complaint for insufficient facts was overruled, and this action of the lower court is first assigned as error. The complaint, omitting formal parts, is as follows: Plaintiffs complain of defendants and say that on January 3, 1902, plaintiffs George Grey, Elizabeth Grey and Rowena Feazel, leased to defendants the following described real estate in Chester township, Wells county, Indiana, to wit: The northeast quarter of the southeast quarter of section four, township twenty-five north, range eleven east, for the purpose of drilling and operating for oil and gas, of erecting and maintaining buildings and structures, and of laying all necessary pipes for the production and transportation of oil and gas; that plaintiffs, under the terms of said lease, were to have one-eighth of all oil produced and saved from said premises, to be delivered in the pipe-line that the second party might connect with said wells; that afterwards, to wit, on the ——— day of ——— said Rowena Feazel conveyed by warranty deed all her right, title and interest in and to said real estate to one of the plaintiffs herein, Mary C. Fetters, who has ever since been and is now the owner of said Feazel's interest; that immediately after the execution of said lease, which was then duly acknowledged, defendants entered into full possession of said real estate for the purpose of carrying out the terms of said lease, and drilling and operating said leased premises; that a copy of said lease is made a part of the pleadings herein; that said lease was duly entered of record in the recorder's office, in Miscellaneous

Record No. 18, on February 14, 1892; that prior to the execution of said lease said premises had been leased for the purpose of developing said premises, and producing gas and oil from said land, and one well had been theretofore drilled on said land, and was producing oil at the time said lease was executed; that said defendants, by the terms of said lease, agreed that a second well should be drilled thereon within thirty days from the date of the execution of the lease, or they would pay a rental of $10 a month, and it was also agreed that a third well should be drilled in thirty days from the completion of the second well, or the monthly rental paid in advance, a fourth well was to be drilled by the defendants within sixty days from the completion of the third well, or a monthly rental of $10 be paid in advance, and a fifth well was to be drilled within sixty days from completion of the fourth well, or the undrilled parts would be forfeited, and each well was to occupy eight acres of land; that a reference in this lease to the drilling of a second well was understood between the plaintiffs and defendants to mean that the well already drilled when said lease was executed should be regarded and called the first well on said premises; that defendants drilled the second well as herein specified, and afterwards, within the time specified in said lease, the third well was drilled on said premises by defendants, which made and constituted two wells drilled by said defendants; that the second well drilled by said defendants was completed in April, 1902; that defendants, although they held possession of said premises and operated said wells already drilled, have never drilled the fourth and fifth wells, as mentioned in said lease; that by reason of such failure, and under the terms of said agreement, defendants have wholly failed to comply with the terms of their lease, and have wholly failed to pay any rental whatever; that there is now due from said defendants to these plaintiffs the sum $600 for rental under the terms of said lease. Wherefore plaintiffs demand judgment

against defendants in the sum of $600, and for all other proper relief.'' The following is a copy of the lease, and is marked exhibit A:

''In consideration of the sum of $1, the receipt of which is hereby acknowledged, we, George Grey, Rowena Feazel, and Elizabeth Grey, of Chester township, Indiana, of the first part, hereby grant and guarantee unto T. J. Driscoll and Charles McCauley, second party, all the oil and gas in and under the following described premises, together with the right to enter thereon at all times for the purpose of drilling and operating for oil and gas, either or both, and to erect and maintain all buildings and structures, and lay all pipes necessary for the production and transportation of oil or gas. The first party shall have the one-eighth part of all oil produced and saved from said premises, to be delivered in the pipe-line with which second party may connect all wells, namely: All that certain lot of land situated in the township of Chester, county of Wells, in the State of Indiana, described as follows, to wit: The northeast quarter of the southeast quarter of section four, Chester township, containing thirty-nine acres, more or less; to have and to hold the above premises on the following conditions: If gas only is found in sufficient quantities to transport, second party agrees to pay first party at the rate of $100 per annum for the product of each and every well so transported, and the first party to have gas free of cost to heat all stoves and light all jets in dwelling house. Second party shall bury all oil and gas lines where likely to interfere with cultivation, otherwise not, and pay all damages done growing crops. In case no well is completed within thirty days from this date, then this grant shall become null and void, unless second party shall thereafter pay at the rate of $10 for each month such completion is delayed. A deposit to the credit of the first party in —————— Bank, in ——————, will be good and sufficient payment for any money falling due on this grant. The second party shall have the right, free of charge, to use sufficient gas, oil and water to run all machinery for operating said wells, also the right to remove all property at any time. There is to be a second well drilled in thirty days from this date, or pay the monthly rental, and a third well in thirty days from

the completion of the second well, or pay the monthly rental in advance, and fourth well in sixty days from completion of third well, or pay the monthly rental in advance, and fifth well in sixty days from the completion of fourth well, or forfeit the undrilled parts. Each well is to hold eight acres. It is understood between the parties to this agreement that all conditions between the parties hereto shall extend to their heirs, executors, successors and assigns. In witness whereof, the parties hereto have hereunto set their hands and seals this 3d day of January, 1902.''

Appellants maintain that the demurrer should have been sustained because the lease is so indefinite and uncertain that the intention of the parties cannot be determined; that the intention of the parties is immaterial, unless it can be ascertained from the terms of the lease.

The complaint alleges that when the lease in suit was executed, there was a producing oil well on the land, and that reference in the lease to the drilling of a second well was understood by the parties to mean that the well already drilled should be regarded as the first well on the premises.

The rule is abundantly settled that a formal written contract, which appears on its face to be complete, cannot be enlarged, modified or contradicted by parol evidence;

2.	but it is equally well settled that when the terms employed are susceptible of more than one meaning it is the duty of the court not only to regard the words within the four corners of the instrument, but also to inform itself of the circumstances of the parties at the time, so as to interpret the language employed from the viewpoint occupied by the parties when they executed the contract. *Cravens* v. *Eagle Cotton Mills Co.* (1889), 120 Ind. 6, 16 Am. St. 298, and cases cited; *Dreyer* v. *Hart* (1897), 147 Ind. 604; *Pate* v. *French* (1890), 122 Ind. 10.

Such a construction of a written instrument will be adopted, if possible, as will make it effectual, rather

3.	than ineffectual, and reasonable and just, rather than the opposite. *Lyles* v. *Lescher* (1886), 108 **Ind.**

382; *Reissner* v. *Oxley* (1881), 80 Ind. 580; 17 Am. and Eng. Ency. Law (2d ed.) 18; *Cravens* v. *Eagle Cotton Mills Co., supra.* The complaint stated a cause of action.

After the cause was at issue, and before the trial thereof, George Grey, one of the plaintiffs, died, and Calvin S. Penrod, his administrator, was, by order of the trial court, substituted as a party plaintiff. Appellants afterwards filed a verified motion, in which it was averred that said Grey left surviving him two minor children, who had no legal guardian, and praying that the proceedings in the cause be stayed until a legal representative for the minor children could be appointed, and be made a party to the action. This motion was overruled, and defendants excepted and have assigned this action of the trial court as error. The court did not err. This proceeding related to personal property, and the heirs of decedent could not have been properly substituted as parties plaintiff.

On the day set for the trial, appellants appeared and objected to proceeding with the trial "until a proper amended complaint or supplemental complaint had been filed by the plaintiffs, making Calvin S. Penrod, administrator of the estate of said George Grey, a proper party plaintiff in said cause." This objection was overruled, and exception given appellants. This action of the circuit court is claimed to be erroneous. The complaint was filed by George Grey, Mary C. Fetters and Elizabeth Grey, plaintiffs, on October 15, 1907. George Grey died December 23, 1907, after the cause was at issue. On May 15, 1908, Calvin S. Penrod was appointed, and he qualified as administrator of the estate of George Grey. On the same day, on oral motion of plaintiff's attorneys, said Penrod, as administrator, was by order of the court substituted as a party plaintiff for decedent. There was no objection by plaintiffs to this action of the court. No amended or supplemental complaint was filed.

While the better practice in case of the death of a person is

to file a supplemental complaint alleging the fact, and praying for the substitution of the personal representative, stating his qualifications, we fail to see wherein appellants were harmed. They did not seek to controvert the fact of the death of decedent, or the fact that a personal representative had qualified, neither did they seek to reopen the issues. If appellants were endeavoring to secure any thing else than delay in the trial of the cause, the record does not disclose it.

Section 700 Burns 1908, §658 R. S. 1881, provides that this court shall not reverse a judgment for any defect in form or imperfection contained in the record, which by law might have been amended below; nor shall any judgment be reversed, where it appears to the court that the merits of the cause have been fairly determined by the trial court. This statute was enacted to dispose of such objections as are here raised. The lower court did not err in its action. §272 Burns 1908, §271 R. S. 1881; *Trent* v. *Edmonds* (1904), 32 Ind. App. 432; *Crary* v. *Kurtz* (1906), 132 Iowa 105, 105 N. W. 590, 119 Am. St. 549; *White* v. *Johnson* (1895), 27 Or. 282, 40 Pac. 511, 50 Am. St. 726 and note.

The next contention is that the lease does not describe nor identify any land in Wells county or elsewhere, and, therefore, is not enforceable. There is no merit in this claim. No particular description of land is necessary in a rental contract.

There is no error in the record. Judgment affirmed.