## KIRKE v. TEXAS CO.

### No. 10218.

United States Court of Appeals
Seventh Circuit.

Jan. 11, 1951.

644

Albert H. Fry, Chicago, Ill., for appellant.

Henry I. Green, Enos L. Phillips, Urbana, Ill., Paul F. Schlicher, Chicago, Ill., Yates A. Land, Tulsa, Okl., for appellee.

Before MAJOR, Chief Judge, and DUFFY and FINNEGAN, Circuit Judges.

DUFFY, Circuit Judge.

Plaintiff brings this action alleging to be the assignee of a chose in action, to wit, a claim for $\frac{1}{32}$ of the gas, gasoline and casinghead gas burned, lost or destroyed upon certain premises located in Marion County, Illinois, and for another claim for $\frac{1}{64}$ of the gas, gasoline and casinghead gas burned, lost or destroyed upon separate nearby property in Marion County, and for all of which accountability is charged to the defendant. This appeal is from the judgment dismissing the complaint. The motion for dismissal listed 15 grounds therefor, but the judgment of the court does not indicate any specific ground or grounds for the dismissal.

It is somewhat difficult to ascertain from a reading of the complaint the exact basis of plaintiff's claim. However, at the oral argument before this court his counsel stated that plaintiff's claim was based upon an implied covenant by the defendant to market, care for, or at least not destroy, casinghead gas produced on the premises in question; that defendant breached the covenant by burning casinghead gas without the consent of the royalty owners, and must therefore respond in damages.

The lease under which defendant operated is a commonly used type of oil and gas lease. In consideration of the right to enter the premises described, produce oil and gas, and remove same, the defendant promised to deliver into a pipeline for lessors' credit $\frac{1}{8}$ of the oil produced from the premises, to pay lessors a royalty for gas from any wells where gas only was found, and to pay the lessors a royalty of $\frac{1}{8}$ of the market value for any gas produced from any oil well and used off the premises or in the manufacture of gasoline or any other product.

The wells on the property in Marion County with which we are concerned lie in the Salem-Centralia field, and produce oil

from a reservoir in which gas is intermingled with oil, the gas being the propelling agency which forces oil from a well.

While plaintiff's complaint makes numerous broad references to oil and gas, it is admitted that those who are entitled to royalties have been paid for all oil that has been produced, and for the gas produced from any oil well which was used off the premises or in the manufacture of gasoline or any other product. Plaintiff does not claim that any of the wells produced gas only, but does claim that the royalty owners were entitled to be paid for their share of the casinghead gas which escaped or was burned, and that as the assignee of a claim by a part royalty owner for the latter's alleged proportionate share of casinghead gas burned or destroyed he is entitled to that extent to damages. We shall therefore disregard as surplusage all allegations of the complaint as to defendant's liability for oil and gas, and for casinghead gas which was processed.

We find from the records of this court in Guth v. Texas Co., 7 Cir., 163 F.2d 893, and Chapman, et al. v. Texas Co., D.C., 80 F.Supp. 15 (the appeal in the latter having been dismissed by this court because the notice of appeal was not timely filed), that as the oil is produced from wells in this field, gas known as casinghead gas escapes at the head of the well, at the surface of the ground. This gas does not have any commercial or market value at the mouth of the well as it carries heavy hydrocarbons which are highly inflammable and explosive, rendering the gas unsafe for use in its raw state. However, if processing plants, which are expensive to construct, are erected, the casinghead gas can be processed and certain hydrocarbons removed, and casinghead gasoline and other products can be extracted and produced for commercial use. Until and unless casinghead gas is processed, it becomes necessary from the standpoint of safety to take every precaution to avoid its escape into the air. Furthermore, the State of Illinois compels all oil field operators to comply with certain rules, among which is, "All gas produced from operation of oil wells that is not utilized shall be burned at a safe distance from any well, storage tank, building, or inflammable materials, as may be determined by the Department." Rule 14-D, promulgated pursuant to Sec. 67, Ch. 104, Ill.Rev.Stat. 1945.

Counsel for plaintiff contends that the complaint herein is "almost identical" to the complaint considered and upheld by this court in Guth v. Texas Co., 7 Cir., 145 F.2d 820, and Guth v. Texas Co., 7 Cir., 155 F.2d 563. Counsel for plaintiff herein was counsel for plaintiff Guth in that case. There the district court had dismissed the complaint for failure to state a claim upon which relief could be granted. We reversed and held in 145 F.2d 820 that the complaint could be construed to state a claim for negligent waste in the extraction of petroleum products from the property in question which had been leased for oil and gas. Although Guth was the owner of only a 1/32 interest we did not pass on his right to bring the action alone as that question had not been raised in the district court.

After the case was remanded to the district court the plaintiff changed the theory of his claim and amended his complaint. Although he retained the claim for negligent waste, he relied principally upon the theory that he was entitled to an accounting for gas, gasoline and petroleum distillates produced on said premises, but which were unpaid and unaccounted for by defendant. In the answer defendant raised the defense that the cause of action sued on could not be maintained by plaintiff alone. Plaintiff moved to strike that defense. The district court denied the motion and plaintiff elected to stand on his pleadings. We held, in 155 F.2d 563, that the claim asserted for negligence by plaintiff was joint and could not be maintained by the plaintiff alone, but we held that any obligation to pay the royalty owners their royalties in proportion to their respective interests in the petroleum products produced was several, and plaintiff could sue separately for his proportion of the royalty. Thereafter the case was tried on the merits before Judge Sullivan.

The complaint in the case at bar originally was filed in the Superior Court of Cook

County, Illinois. On motion of the defendant, the action was removed to the district court. The Federal Rules of Civil Procedure, 28 U.S.C.A., are applicable to it, Rule 81(c) of which provides: "These rules apply to civil actions removed to the United States district courts from the state courts and govern procedure after removal. * * *" Attention is directed to this provision because counsel in their respective presentations appear to have entirely overlooked the application of the federal rules.

Only limited and specified defenses may be asserted by a motion to dismiss. Rule 12(b) provides: "Every defense in law or fact, to a claim for relief in any pleading, * * * shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, (7) failure to join an indispensable party. * * *"

Of the 15 enumerated grounds set forth in defendant's motion to dismiss, grounds 3, 4, 5, 7[1], 8, 9, 10, 11 and 13 must be disregarded as not authorized under the federal rules in a motion to dismiss. The remaining grounds, to wit, 1, 2, 6, 12, 14 and 15 may be considered together as in substance they involve the question whether the complaint states "a claim upon which relief can be granted."

Defendant points out that the appellant herein is the third plaintiff for whom the same counsel has prosecuted the same kind of a lawsuit against this defendant in the federal courts, and all upon oil and gas leases identical in form and substance, and that in neither of the previous cases have the plaintiffs prevailed in a trial on the merits. Defendant refers to the previous cases of Guth v. Texas Co., 7 Cir., 163 F.2d 893, certiorari denied 332 U.S. 844, 68 S.Ct. 268, 92 L.Ed. 415, and Chapman, et al. v. Texas Co., D.C., 80 F.Supp. 15. As heretofore indicated the Guth case was twice before this court on the pleadings. Thereafter, upon the trial on the merits, Judge Sullivan found the issues in favor of defendant, and on appeal this court affirmed. In that opinion we said, 163 F.2d 893, 894:

"* * * It is for this wet casing-head gas which was allowed to escape and was flared that the plaintiff seeks compensation on the ground that this was 'gas produced and in possession' of the defendant, within the meaning of our former opinion. The plaintiff contends that the defendant had possession of the casing-head gas in the pipes to the mouth of the well, and it must account for such gas as it let escape.

"We cannot agree that this was such possession as would make the defendant liable. One cannot be said to possess something which he cannot by force of circumstances contain or control. The defendant was faced with a problem. It could leave the oil and gas in the wild fugacious state under the land and thereby lose both to its competitors operating on adjacent land. Or it could let the gas escape and flare it, as required by the Illinois law, capture the far more valuable oil, and build a gasoline extraction plant as soon as possible to save the gas. It did the latter."

In so far as plaintiff in this case seeks recovery for casinghead gas which escaped or was flared prior to the erection of the processing plant, we think, in view of our decision above quoted, that the district court was justified in holding plaintiff did not have a claim upon which relief can be granted. Naturally, the plaintiffs in the Guth case are different persons than the plaintiff herein, but the legal principles involved are the same. The wells are in the same field, quite close together, and we cannot conceive of any possible circumstances which would make the rule laid down in the Guth case inapplicable to the case at bar as pertains to casinghead gas prior to the erection of the processing plant.

But the allegations of the complaint in the instant case specifically refer to casinghead gas which was lost or burned after the erection of the processing plant. It is alleged, "This plaintiff states further, that

1. Hereinafter given specific consideration.

after the first wells were drilled in 1938, the defendant, The Texas Company, built and constructed a processing plant, for the purported purpose of processing the gas, gasoline and casinghead gas so produced from said lands, which was completed in February, 1939; that the plant so built, was wholly and totally inadequate to process the gas, gasoline and casinghead gas so produced, in fact, owing to the inadequacy of said plant, less than 5% of the gas, gasoline and casinghead gas so produced, could have been processed, and so known to the defendant, The Texas Company, to be wholly inadequate to process more than a small percentage thereof; that The Texas Company, defendant, failed and refused to enlarge said plant to a capacity adequate to process all of said gas, gasoline and casinghead gas; * * *."

Defendant points to the Chapman case, 80 F.Supp. 15, where one of the issues raised by the plaintiff was that the processing plant was insufficient in capacity to refine all of the available casinghead gas, and that consequently only a small percent of such gas was processed. In that case the plaintiffs specifically limited their claims to the period after the first unit of the processing plant was completed. After a trial upon the merits all of the issues in that case were decided in favor of the defendant. Plaintiffs then attempted an appeal to this court, but it was dismissed and therefore we did not pass upon the issues. Even though we might have agreed with Judge Lindley's statement of the law based upon the evidence in that case, we do not think that on a motion to dismiss herein we should attempt to rule on issues which will necessarily depend on the evidence.

■ We think that the plaintiff is entitled to his day in court to prove, if he can, a breach of an alleged implied covenant in the matter of the construction of a processing or extraction plant, and a liability on the part of defendant for the burning of casinghead gas after the erection of such plant. We did not pass on these issues in the Guth case.

"* * * No matter how likely it may seem that the pleader will be unable to prove his case, he is entitled, upon averring a claim, to an opportunity to try to prove it." Continental Collieries, Inc. v. Shober, Jr., 3 Cir., 130 F.2d 631, 635.

The seventh ground stated in defendant's motion to dismiss is: "The purported assignment was wholly void, champertous, and contrary to public policy." Defendant argues that the assignments to the plaintiff are illegal and void, that they are nothing more than the sale to plaintiff of a right to commence and prosecute a lawsuit, and therefore are void as against public policy and as savoring of maintenance.

The two assignments which are attached to and a part of the complaint disclose that one Albert H. Sebastian asserted he was the owner of claims against the Texas Company growing out of the burning, destruction and loss of gas, gasoline or casinghead gas from wells on property therein described; that he assigned said claims to plaintiff Kirke who agreed to pay all the expenses of prosecuting the claims and to pay Sebastian 25% of any sums or property recovered. Paragraph 4 of each assignment provides, "It is specifically understood and agreed, that this assignment does not apply to any gas, gasoline or casinghead gas which heretofore has been or hereafter to be processed from said wells above set forth. All gas, gasoline, or casinghead gas heretofore processed, or to be processed hereafter from said wells, is specifically omitted from this assignment, and the effect thereof."

■ Defendant invites our attention to depositions of Sebastian and the plaintiff claiming that an examination would disclose the acts of plaintiff's counsel in fomenting this litigation. We think that in examining the correctness or error of granting the motion to dismiss we have no right to examine the depositions or consider the evidence which they disclose, as we might do were the granting of a motion for summary judgment here involved. The circumstances surrounding the execution of the agreement and the agreement itself should have close scrutiny by the trial judge when appropriate in the further proceedings in the case. Under Rule 8(c), Federal Rules of Civil Procedure, the de-

fense of illegality must be affirmatively pleaded.

 One additional issue may be disposed of at this time. In his first claim plaintiff repeatedly alleges that the lease created a trust relationship between the lessee and those entitled to royalties. Upon the trial all allegations that defendant became a trustee may be disregarded. Under Illinois law a relation of special trust and confidence is not created between lessor and lessee, or those respectively claiming under them, by an oil and gas lease. O'Donnell v. Snowden & McSweeney Co., 318 Ill. 374, 149 N.E. 253. An oil and gas lease is subject to the same rules of construction as any other contract. Minerva Oil Co. v. Sohio Petroleum Co., 336 Ill. App. 372, 84 N.E.2d 167; Hein v. Shell Oil Co., 315 Ill.App. 297, 42 N.E.2d 949.

The judgment appealed from is reversed and the cause is remanded for further proceedings in conformity with law. No costs in this court will be allowed to either party. It is so ordered.